# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MRS. FIELDS' ORIGINAL COOKIES,
INC., PTF, LLC ,

                           **Plaintiffs,**

-vs-                                          **Case No.  6:08-cv-692-Orl-28KRS**

PRETZELS OF VOLUSIA, INC., DAVID
BISHOP,

                    **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT FOR DAMAGES, INJUNCTIVE RELIEF, AND ATTORNEYS FEES AND COSTS (Doc. No. 21)** |
| **FILED:** | **November 20, 2008** |

## I.    INTRODUCTION.

       Plaintiffs Mrs. Fields' Original Cookies, Inc. ("Mrs. Fields"), and PTF, LLC ("PTF"), both

Delaware corporations, filed this action on April 29, 2008 seeking damages resulting from the breach

of a purchase agreement between a predecessor in interest to PTF, a wholly-owned subsidiary of Mrs.

Fields, and Defendant David Bishop, a Florida citizen.  The complaint also sought damages for the

separate breach of a related sublease agreement between Mrs. Fields and Defendant Pretzels of

Volusia, Inc. ("Pretzels of Volusia"), a Florida corporation.[1]  This Court has personal jurisdiction over Defendants because they conduct business in this district and the events giving rise to the claims occurred within this district.

Plaintiffs filed a return of service that reflects that Bishop was served in accordance with Fed. R. Civ. P. 4(e)(2)(B).  Doc. No. 5.  The process server avers he left a copy of the summons and complaint at Bishop's usual place of abode with an adult co-resident, and informed that person of the contents of the summons and complaint. *Id.*  Plaintiffs filed a return of service on an alias summons reflecting that Pretzels of Volusia, was served in accordance with Fed. R. Civ. P. 4(h)(1)(B).  Doc. Nos. 15-16.  The process server avers he left a copy of the summons and complaint with a manager at Pretzels of Volusia's place of business.  *Id.*

Neither Bishop nor Pretzels of Volusia has answered the complaint or otherwise appeared in this case, and the time to do so has passed.  Accordingly, at Plaintiffs' request, the Clerk of Court entered defaults against each defendant.  Doc. Nos. 19, 20.  On November 20, 2008, Plaintiffs filed the present motion for default judgment for damages, injunctive relief, and attorneys' fees and costs. Doc. Nos. 21, 23.

## II.   APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a

---

[1]  Plaintiffs allege that Bishop is the president and shareholder of Pretzels of Volusia.  Doc. No. 1 ¶ 4.

motion for default judgment, a court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to" a default judgment.  *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages.  Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id*.

## III.     ALLEGATIONS OF THE COMPLAINT.

### A.   *Breach of Kiosk Purchase Agreement*

According to Plaintiffs' complaint, on February 28, 2007, PTF (through its predecessor in interest Pretzel Time Franchising, LLC) and Bishop entered into an agreement for the purchase of a Pretzel Time branded All Star Carts Kiosk governed by Utah law.  Doc. 1 ¶ 9. Article 3.1 of the agreement listed the purchase price as $79,487.50 and required full payment by or before March 5, 2007. Doc. No. 1 ¶ 9.  Bishop took possession of the kiosk and failed to make the required payment. Doc. No. 1 ¶ 16.  Plaintiffs subsequently offered Bishop the opportunity to return the kiosk on or before October 22, 2007 in lieu of payment on the condition Bishop pay the return shipping costs. *Id.* As of the filing of the Complaint, Bishop had neither paid for the kiosk nor returned it to Plaintiffs. *Id.*

B.  *Breach of Sublease Agreement*

According to Plaintiffs' complaint, Mrs. Fields leased premises located in a Volusia Mall. Doc. No. 1 ¶ 11.[2]  Pretzels of Volusia became the sublessee of the Volusia Mall premises pursuant to an agreement dated June 30, 2008.  *Id.* ¶ 12.   Pursuant to the sublease, Pretzels of Volusia was required to pay rent to Mrs. Fields on a monthly basis.  Doc. No. 13.  Pretzels of Volusia failed to pay the monies due.  *Id.* ¶ 18.  On November 27, 2007, Mrs. Fields notified Pretzels of Volusia of an "arrears in the amount of $12,012.44," and gave Pretzels of Volusia ten days to cure the default.  Doc. 1 ¶ 18.   Pretzels of Volusia failed to cure the default.  *Id.* ¶ 19.

On December 7, 2007, Mrs. Fields served Pretzels of Volusia with a Notice of Termination and Abeyance of Termination.  Under that document, Mrs. Fields agreed to hold the termination in abeyance provided that Pretzels of Volusia and Bishop paid all past due rents on or before December 24, 2007.  *Id.* ¶ 20.  Pretzels of Volusia and Bishop accepted the terms of the abeyance but did not pay the rent due.  *Id.* ¶ 21.

**IV.   ANALYSIS.**

A.    *Liability*.

1.    Defendant Bishop's Breach of the Kiosk Purchase Agreement.

"The elements . . . for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages."  *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (D. Utah 2001) (internal citations omitted).  By failing to answer the complaint,

---

[2]  Mrs. Fields actually subleased the premises from C&C Taylor Made Pretzels, Inc.  The sublease agreement between Mrs. Fields and C&C Taylor Made Pretzels, Inc., which was the basis of the assignment and sublease by Mrs. Fields to Pretzels of Volusia, is governed by Florida law. Doc. No. 103.

Bishop admits that he entered into the kiosk purchase agreement, that PTF performed the contract by providing the kiosk, that Bishop breached the contract by failing to pay for the kiosk, and that PTF was damaged as a result of the breach.  As such, Bishop is liable for breach of contract under Count I of the Complaint.

2.   <u>Defendant Pretzels of Volusia's Breach of Sublease Agreement</u>.

Under Florida law, "[t]he elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d Dist. Ct. App. 2006) (internal citations omitted).  By failing to answer the Complaint, Pretzel's of Volusia admits that it entered into the sublease agreement, that Mrs. Fields performed under the contract by providing the rented premises at Volusia Mall, that it failed to pay the rent due under the agreement, and that Mrs. Fields was thereby damaged.  As such, Pretzels of Volusia is liable for breach of contract under Count II of the Complaint.

B.   *Damages.*

Plaintiffs submitted the Certification of Michael Ward, Doc. No. 21, to establish its actual damages.  Ward is the Executive Vice President and Chief Legal Officer for Mrs. Fields.  PTF is an indirect wholly owned subsidiary of Mrs. Fields.  *Id.* ¶ 2.

Ward avers that pursuant to the kiosk purchase agreement, a copy of which is attached to the Complaint, Bishop agreed to pay $79,487.50 to PTF on or before March 5, 2007.  As of the date of Ward's certification, Bishop had not made any payment toward this purchase price.  *Id.* ¶ 4 & Ex. 1. Ward further avers that Bishop had not returned the kiosk.  *Id.* ¶ 4.

With respect to the sublease agreement, Ward avers that Pretzels of Volusia entered into the sublease, a copy of which is attached to the Complaint.  Under the sublease, Pretzels of Volusia was required to pay rent to Mrs. Fields on a monthly basis.  The failure timely to pay rent constitutes a default under the sublease.  In addition, under the sublease agreement Pretzels of Volusia agreed to pay Mrs. Fields the attorneys' fees and costs incurred as a result of the breach of the sublease.  *Id.* ¶ 5. As of the writing of Ward's certification, Ward avers that Pretzels of Volusia owed Mrs. Fields rent in the amount of $40,731.21.  *Id.* ¶ 7 & Ex. 1.

Ward's certification is sufficient to establish the damages to be awarded to PTF under the kiosk purchase agreement in the amount of $79,487.50.  Ward's certification is also sufficient to establish the damages to be awarded to Mrs. Fields under the sublease agreement in the amount of $40,731.21.

Mrs. Fields also seeks an order ratifying and enforcing the termination of the sublease as of December 7, 2007.  Doc. Nos. 1, 23.  However, Mrs. Fields has not provided a memorandum of law that would support the entry of such an order.

*C.  Attorneys' Fees for Defendant Pretzels of Volusia's Breach of Contract.*

Finally, Mrs. Fields seeks to recover its reasonable attorneys' fees and costs in the amount of $10,191.08.  Doc. No. 21 at 4 ¶ 8.  Mrs. Fields' sublease with Pretzels of Volusia entitled a prevailing party that brought any action to enforce its rights under the sublease to its "reasonable attorneys' fees and court costs and determined by the court."  Doc. No. 1-3 at 11, § 13.2 (Attorneys' Fees).

In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, which is commonly

referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id.* at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).

       1.   <u>Determining the Reasonable Hourly Rate.</u>

In determining the lodestar, a reasonable hourly rate is based on the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1571 (11th Cir. 1985); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (enumerating additional factors to consider). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman*, 836 F.2d at 1299 (internal citations omitted).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees. *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002). The "'fee applicant bears the burden of . . . documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)(quoting *Norman*, 836 F.2d at 1303). "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. If the party submits inadequate documentation, the district court may reduce the amount of the award. *See id.*

Counsel for Mrs. Fields, Iris Figueroa Rosario, Esq., avers the following about the attorneys who performed work in this case:

- David Worthen, Esq., is a shareholder at the firm of Gray Plant Mooty.  Doc. No. 21 at 11-18 ("Rosario Decl.") ¶ 7.  The firm has been national legal counsel for Mrs. Fields' for four years, and represents many other national franchisors.  *Id.* ¶¶ 4-5, 11. Worthen has been licensed to practice law for twenty years, and has significant litigation and franchise experience.  *Id.*  Figueroa Rosario seeks an hourly rate of $345.00 per hour for Worthen's work.  *Id.*

- Iris Figueroa Rosario, Esq., graduated from American University Washington College of Law in 2001 and has litigated civil cases with a focus on franchise litigation for the past five years.  *Id.* ¶ 3.  She seeks an hourly rate of $230.00 per hour for her work.

Rosario also seeks fees for paralegals Daniela Rojas and Karen Benya at $135.00 and $115.00 per hour, respectively.  *Id.* ¶ 13.  She provided no information about their background or experience.

Rosario avers Gray Plant Mooty used local counsel to handle issues in the case to "reduce the amount of expenses billed."  *Id.* ¶ 8.  Local counsel for Mrs. Fields, Alicia J. Schumacher, Esq., avers the following about the attorneys at her firm that performed work in this case:

- Alicia J. Schumacher, Esq., is a shareholder at the firm of Bush Ross, P.A.  Doc. No. 21 at 31-44 ("Schumacher Decl.") ¶ 2.  She is a 1990 graduate of Florida State University Law School and has extensive franchise litigation experience.  *Id.*  She seeks an hourly rate of $300.00 per hour for her work.

• Scott Givens, Esq., is an associate at the firm of Bush Ross, P.A. *Id.* ¶ 5. Givens assisted Schumacher with the work in this case. *Id.* Schumacher seeks an hourly rate of $240.00 per hour for Givens' work. *Id.*

Mrs. Fields submitted the Affidavit of Jeffrey P. Greenberg in support of its requests for an award of attorneys' fees. Doc. No. 21 at 55-56 ("Greenberg Decl."). Greenberg avers he has been licensed to practice law in Florida since 1989. *Id.* ¶ 2. He has served as in-house counsel for six years and is familiar with the rates customarily charged by attorneys in Florida and Washington, D.C. for civil litigation services. *Id.* ¶¶ 3-4. Greenberg reviewed the billing statements and opined that the services appeared to be "reasonable and necessary for the proper representation of the Plaintiffs in this matter." *Id.* ¶¶ 5-6. He found the attorneys' fees and costs were reasonable. *Id.* ¶ 7.

The hourly rates for the attorneys are reasonable in my experience, as supported by Greenberg's declaration, and in the absence of objection. The hourly rates sought for the paralegals, however, are not reasonable in the absence of any information about their background or experience. Accordingly, I recommend that the Court find that the reasonable hourly rate Paralegals Rojas and Benya is $65.00 per hour, which is a reasonable hourly rate in the central Florida market for paralegals.

2.      Reasonable Number of Hours.

An attorney's averment that he or she actually work the time recorded is "evidence of considerable weight on the issue of the time required in the usual case." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). However, an attorney's affidavit does not relieve the court of its duty to award only reasonable fees. *See Hensley*, 461 U.S. at 434, *City of Riverside v. Rivera*, 477 U.S. 561, 570 & n.4 (1986)(plurality).

*Hensley* requires counsel to "exercise 'billing judgment' with respect to hours worked." *Hensley*, 461 U.S. at 437 (quotation in original). The *Hensley* Court placed this burden on counsel not because they "should necessarily be compensated for less than the actual number of hours spent litigating a case, but because the hours [they do] seek compensation for must be reasonable." *City of Riverside v. Rivera*, 477 U.S. 561, 570, 570 n.4 (1986)(plurality).

If fee counsels fail to exercise their own billing judgment, courts are obligated to exercise it for them. *ACLU v. Barnes*, 168 F.3d, 423, 428 (11th Cir. 1999). A court must deduct the "excessive, redundant, or otherwise unnecessary" fees under the circumstances of the case, *Hensley*, 461 U.S. at 434, because "it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428; *see also Perkins*, 847 F.2d at 738.

A district court must articulate all of the decisions it makes concerning attorneys' fees and costs, state principled reasons for those decisions, and show any calculations. *Norman*, 836 F.2d at 1304; *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985). If the court disallows any claimed hours, it must explain which hours it has disallowed and state reasons why an award of these hours would be improper. *Norman*, 836 F.2d at 1304; *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985); *Fitzpatrick v. IRS*, 665 F.2d 327, 332-33 (11th Cir. 1982).

Figueroa Rosario and Schumacher aver that hours worked by the attorneys for Mrs. Fields in this case "were reasonable and necessary to properly represent" Mrs. Fields. Rosario Decl. ¶ 7; Schumacher Decl. ¶ 6-7. Both attorneys submitted time sheets setting forth the description of the work, the attorney or paralegal who performed it, and the amount of time worked. Rosario averred

-10-

her firm did not include "fees and costs associated with re-serving the papers on Defendant Pretzels of Volusia and re-filing this motion for default judgment."  Rosario Decl. ¶ 10.

I find that the hours worked by the professionals in this case are reasonable in light of Greenberg's declaration, Figueroa Rosario's averment that fees for reserving Pretzels of Volusia and refiling the instant motion were deducted, and the absence of objection.

D.  *Lodestar.*

Based on the foregoing recommendations, the lodestar attorneys' fee would be as follows:

| ATTORNEY | HOURLY RATE | HOURS | TOTAL |
|---|---|---|---|
| David Worthen | $345.00 | 1.60 | $552.00 |
| Iris Figueroa Rosario | $230.00 | 21.00 | $4,830.00 |
| Daniela Rojas | $65.00 | 0.25 | $16.25 |
| Karen Benya | $65.00 | 3.30 | $214.50 |
| Alicia J. Schumacher | $300.00 | 10.40 | $3,120.00 |
| Scott Givens | $240.00 | 2.20 | $528.00 |
| **TOTAL** | | | **$9,260.75** |

E.  *Costs.*

As noted above, by the terms of Sublease Agreement, Mrs. Fields is entitled to an award of any amount it had to pay that was necessary to protect its rights in the agreement.  Mrs. Fields seeks to recover the following:

| DATE | FEE DESCRIPTION | TOTAL |
|------|-----------------|-------|
| | Delivery charges (Rosario Decl.) | $56.26 |
| 5/27/08 | Federal Express charges (Schumacher Decl.) | $22.86 |
| 5/31/08 | Photocopy charges (Schumacher Decl.) | $8.00 |
| 5/31/08 | Telephone charges (Schumacher Decl.) | $2.13 |
| 6/09/08 | Service of process (Schumacher Decl.) | $116.00 |
| 6/09/08 | Service of process (Schumacher Decl.) | $137.60 |
| 6/24/08 | Filing fee (Schumacher Decl.) | $350.00 |
| 6/24/08 | Photocopy charges (Schumacher Decl.) | $2.75 |
| 6/30/08 | Tracer search (Schumacher Decl.) | $2.00 |
| 6/30/08 | Tracer search (Schumacher Decl.) | $2.00 |
| 6/30/08 | Online research charges (Schumacher Decl.) | $13.02 |
| 6/30/08 | Postage charges (Schumacher Decl.) | $0.84 |
| 8/31/08 | Online research charges (Schumacher Decl.) | $27.73 |
| 8/31/08 | Photocopy charges (Schumacher Decl.) | $4.50 |
| 8/31/08 | Postage charges (Schumacher Decl.) | $1.68 |
| 8/31/08 | Telephone charges (Schumacher Decl.) | $0.46 |
| **GRAND TOTAL** | | **$747.83** |

Because the sublease agreement does not limit the reimbursable expenses to statutory costs as set forth in 28 U.S.C. § 1920, I find that all of the expenses are reasonable in the absence of objection.

V.      **RECOMMENDATION.**

For the foregoing reasons, I respectfully recommend that the Court do the following:

1.      **GRANT** in part Plaintiffs' Motion for Default Judgment for Damages, Injunctive Relief, and Attorneys Fees and Costs (Doc. No. 21);

2.      **DIRECT** the Clerk of Court to enter a judgment against Defendant David Bishop in favor of Plaintiff PTF, LLC in the amount of $79,487.50;

3.      **DIRECT** the Clerk of Court to enter judgment against Defendant Pretzels of Volusia, Inc., in favor of Mrs. Fields Original Cookies, Inc. in the amount of $50,739.79 (damages in the amount of $40,731.21, attorney's fees in the amount of $9,260.75, and costs in the amount of $747.83);

4.      **DENY** Plaintiffs' Motion for Default Judgment for Damages, Injunctive Relief, and Attorneys Fees and Costs (Doc. No. 21) in all other respects; and,

5.      **DIRECT** the Clerk of Court to close the file following entry of the judgment.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 30, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE